# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) CASE NO. 1:15-CR-00004 |
| v. | ) Judge Dan Aaron Polster |
| RONALD BERGRIN, | ) **OPINION AND ORDER** |
| Defendant. | ) |

Before the Court is Intervener Dr. Kenneth A. Kelner's Motion to Intervene and Unseal Documents, Doc #: 123. Kelner seeks leave to intervene in this matter for the purpose of moving this Court to unseal three sealed documents (Docs #: 95, 96, and 97). Kelner seeks access to these documents to assist him in defending against civil claims brought against him in the Supreme Court of New York, County of New York by Ronald Bergrin, Defendant in this closed criminal case. Bergrin opposes the Motion but, in the alternative, filed a Cross-Motion to unseal all documents related to his competency, Doc #: 124. For the following reasons, the Motion is **DENIED** and Bergrin's Cross-Motion is **DENIED as MOOT**.

## I. Background

In 2009, Bergrin met with FBI agents concerning their investigation of Bergrin's cousin, Paul Bergrin. Doc #: 1-1, Crim. Compl. 1–2. Bergrin wanted to propose a plea agreement for his cousin, and "Bergrin felt that the Federal government was being overly harsh toward his cousin." *Id.* Ultimately, Paul was convicted of racketeering, racketeering conspiracy, violent crime in aid of racketeering, conspiracy to murder a witness, and other charges, resulting in multiple life

sentences. *Id.* On December 18, 2014, Bergrin sent an email to a relative threatening to harm the FBI agent that had been the lead agent in Paul's criminal trial. *Id.* at 3. On December 19, 2014, the FBI arrested Bergrin for making these threats. *Id.* at 4. On January 6, 2015, Bergrin was indicted on three counts: threatening a federal law enforcement officer in retaliation for performing official duties, in violation of 18 U.S.C. § 115(a)(1)(B); sending threats in interstate commerce, in violation of 18 U.S.C. § 875(c); and cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B). Doc #: 10, Indictment 1–2.

In the course of Bergrin's criminal proceedings, the Court found Bergrin was "not able to assist counsel in his defense due to paranoid delusions exacerbated by stress." Doc #: 49, Minutes of Proceeding 1. The Court referred Bergrin to the Bureau of Prisons to determine whether Bergrin could be restored to competency. *Id.* Once Bergin completed the program, the Court held another hearing and found Bergrin incompetent to stand trial. Doc #: 98, Minutes of Proceeding 1. On October 27, 2016, the Court dismissed the indictment without prejudice and Bergrin was released from federal custody. Doc #: 100, Judgment 1.

Bergrin filed suit against Kelner in the Supreme Court of New York, County of New York on August 9, 2017. *Ronald Bergrin v. Kenneth A. Kelner and Robert S. Kelner*, N.Y. Sup. Ct. Case No. 655268/2017, Doc #: 1. The Verified Amended Complaint, filed October 16, 2017, alleged breach of contract and breach of the duty of good faith and fair dealing. *Bergrin v. Kelner*, Doc #: 40. On January 23, 2019, at least 16 months after Kelner had learned of Bergrin's criminal case in this court, Kelner moved this Court for leave to intervene under Fed. R. Civ. P. 24(b)(1)(B) to unseal Doc #s: 95, 96, and 97. Doc #: 123. Doc #: 95 is Defendant's Objections to the August 29, 2016 Competency Report and, included as an attached exhibit, the August 29, 2016 Competency Evaluation report. Doc #: 96 is the Government's Response in Opposition to Doc #:

2

95 and, included as exhibits, Bergrin's June 28, 2015 Competency Evaluation Report.  Doc #: 97 was Defendant's Reply to Doc #: 96.

**II.     Analysis**

Federal Rule of Civil Procedure 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact."  Kelner argues that the Motion to Intervene should be granted and the three documents should be unsealed because the two cases share common questions of law and fact.  Bergrin and the Government both disagree and assert that the two cases involve different sets of facts and require the courts to apply different legal standards.  Gov't Opp. 3-4; Bergrin Opp. 1.  The Goverement also contends that Kellner's Motion is untimely and would harm Bergrin's privacy interests.  Gov't Opp. 3, 5-8.  The Court denies Kelner's Motion for the following reasons.

    **1.     Kelner's Motion to Intervene is Untimely to Intervene Permissively Under Fed. R. Civ. P. 24(b).**

Kelner argues that the Motion to Intervene under Rule 24(b) should be granted, yet Kelner's Memorandum in Support does not acknowledge Rule 24(b)'s requirement of timeliness.  In fact, Kelner claims in his Reply to the Government's Opposition that the relevant inquiry is not whether a Motion to Intervene is timely made.  This is patently incorrect.  In considering intervention under Rule 24(b), the "court where the action is pending must *first* be satisfied as to timeliness[.]" *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365 (1973).  "Timeliness is to be determined from all the circumstances.  And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review." *Id.* at 366 (*see also FMC Corp. v. Keizer Equip. Co.*, 433 F.2d 654, 656 (6th Cir. 1970)).  By September 25, 2017, at the very latest, Kelner was aware of this Court's finding that Bergrin was incompetent to stand trial because Kelner mentioned this Court's

3

competency ruling in his Motion to Dismiss the state court action . *Bergrin v. Kelner*, Doc #: 36. Kelner presents no compelling reason for waiting 16 months to file this Motion to Intervene. Accordingly, this Court finds that Kelner's Motion to Intervene is not timely, and therefore should not be granted under Rule 24(b).

> **2. Kelner Has Failed to Prove a Common Question of Fact or Law to Intervene Permissively Under Fed. R. Civ. P. 24(b).**

Rule 24(b) requires that an intervener have a "claim or defense that shares with the main action a common question of law or fact." In comparing Bergrin's criminal case in this Court with the civil case in New York, Kelner incorrectly asserts that these cases embody "near identical questions of both law and fact." Doc #: 129, Intervener's Reply to Government's Opposition 4. Comparing these two cases reveals a series of distinct differences. Not only are the facts of the cases significantly different (the criminal case involved threats made to a federal agent; the civil case involves an alleged breach of contract), but the legal standards that apply in each case are different.

In order for a criminal defendant to be deemed incompetent to stand trial, a court must determine that, by a preponderance of the evidence, the defendant is presently suffering from a mental disease or defecting rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. *United States v. Dehar*, No. CR. 07-20558, 2008 WL 4960462, at *1 (E.D. Mich. Nov. 17, 2008) (citing 18 U.S.C. § 4241). The court's determination that a criminal defendant is incompetent to stand trial ends the litigation, like it did in Bergrin's case. It is a violation of the Sixth Amendment to prosecute a criminal defendant found to be incompetent.

On the other hand, a court determining whether a civil plaintiff possesses the capacity to sue must determine whether the plaintiff has the "power to appear and bring [his] grievance before

4

the court[.]" *Graziano v. City of Albany*, 3 N.Y.3d 475, 479 (2004). But a plaintiff's mental incapacity does not end the litigation like a finding of incompetency in a criminal proceeding does. Instead, a plaintiff's mental incapacity merely renders a plaintiff "incapable of adequately prosecuting or defending his rights" and warrants the appointment of a representative or other suitable fiduciary with authority to act on behalf of the plaintiff. *Sayers v. Winthrop University Hosp.*, No. 9912-07, 2010 WL 2574039, at *2 (N.Y. Sup. Ct. June 23, 2010). Thus, courts engage in different analyses when determining whether a criminal defendant is competent to stand trial or a civil plaintiff has capacity to sue. Accordingly, no common question of fact or law exists between the two cases that would weigh in favor of intervention.

### 3. Bergrin's Privacy Interests Would Be Harmed by Unsealing the Documents.

Kelner argues that his right to inspect and copy outweighs Bergrin's privacy interest in the sealed documents. The Supreme Court has recognized the common-law right to inspect and copy judicial records and documents, but "the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). The Supreme Court did not precisely define the contours of the common-law right. *Id.* at 599. It is widely accepted, however, that there are "important exceptions which limit the public's right of access to judicial records." *In re The Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir. 1983). "[T]rial courts have always been afforded the power to seal their records when interests of privacy outweigh the public's right to know." *Id.* at 474 (citing *Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1179 (6th Cir. 1983)). In *Nixon*, the Supreme Court provided factors for a trial court to consider when determining whether to deny access to court documents:

> [T]he interests to be weighed include (1) the Court's supervisory powers over its own documents; (2) the benefit to the public from the incremental gain in knowledge that would result from access to the materials in question; (3) the degree of danger to the petitioner or other persons mentioned in the materials; (4) the

5

>     possibility of improper motives on the part of the media; and (5) any special circumstances in the case.

*Ashcroft v. Bagley*, 351 F. Supp. 2d 786, 789 (2005) (citing *United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986); *Nixon*, 435 U.S. at 602–03 ).

In the present case, the factors weigh in Bergrin's favor. First, this Court "has supervisory power over its own documents and files, and has the power, if not the duty, to restrict access to those materials where they might be used improperly." *Ashworth*, 351 F. Supp. 2d at 789. Second, there is no incremental gain in knowledge to the public to be had by releasing Bergrin's medical information. Third, the degree of potential harm to Bergrin if his medical records are released is substantial. The documents sealed by this Court contain identifying information, medical examinations, psychological assessments, personal history, medical and psychiatric history, cognitive assessments, and prognoses. The fourth factor is irrelevant as Kelner is not a member of the media. Finally, there are no exceptional circumstances that weigh in favor of Kelner's request for unsealing these documents.

Protecting Bergrin's privacy interests is this Court's compelling reason for sealing these specific documents. A vast majority of the docket for the Bergrin criminal case in this Court remains open for public inspection. A wealth of information relevant to Kelner's defenses in the New York case is available to him on the remainder of the docket, which can be accessed freely. Accordingly, this Court is not persuaded that Kelner will be prejudiced by being denied access to the specific documents requested. Kelner fails to demonstrate how, in light of the relevant facts and circumstances, the public's right to inspect and copy judicial documents and files outweighs Bergrin's privacy interest in these specific documents that contain sensitive personal information.

**III.   Conclusion**

Accordingly, the Motion to Intervene and Unseal Documents, Doc #: 123, is hereby **DENIED.** Bergrin's Cross-Motion, Doc #: 124, is **DENIED as MOOT**.

However, because Bergrin, the only party with a privacy interest in these documents, has suggested in the alternative unsealing *all* documents related to the competency determination in the criminal case, the Court will do so upon notice from the Supreme Court of New York, County of New York that it feels these documents would be helpful to make its competency determination.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster Feb. 19, 2019*
**DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE**